**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Associated Industries Insurance Company Incorporated,

        Plaintiff,

v.

Artemis Shamamian, et al.,

        Defendants.

No. CV-23-00797-PHX-DWL

**ORDER**

## INTRODUCTION

Beginning in August 2014, attorneys Robert Pasionek and Paul Krulisky had an "of counsel" relationship with the law firm of Davis Miles McGuire Gardner, PLLC ("Davis Miles"). In March 2015, Artemis Shamamian retained Pasionek to provide legal services for herself and the Adrina Shamamian Living Trust (together with Artemis Shamamian, "Shamamian"). The engagement letter, which was on Davis Miles letterhead, stated that Shamamian's initial retainer payment should be deposited in a particular trust account. As it turns out, the account was not a Davis Miles trust account—instead, it was a separate account held by Pasionek.

In June 2015, Davis Miles ended its "of counsel" relationship with Pasionek and Krulisky, and Pasionek continued providing legal services to Shamamian (and receiving legal fees from Shamamian) for several years afterward. Finally, in 2021, Shamamian terminated the representation and then filed a lawsuit against Pasionek and his wife ("the Pasionek Defendants"), Krulisky and his wife ("the Krulisky Defendants"), Pasionek &

1  Krulisky ("P&K"), Davis Miles, and others in Arizona state court, asserting legal
2  malpractice, fraud, and other tort claims (the "State Court Action").  (Doc. 15-1 at 2-28.)

3         Associated Industries Insurance Company, Inc. ("Associated"), which is not a party
4  to the State Court Action, provided professional liability insurance to Davis Miles.  In May
5  2023, Associated filed this declaratory relief action seeking a determination that its policy
6  does not require it to defend or indemnify the Pasionek Defendants, the Krulisky
7  Defendants, or P&K in the State Court Action.  (Doc. 1.)[1]

8         Now pending before the Court is Shamamian's motion to dismiss or stay.  (Doc.
9  15.)  For the following reasons, the motion is granted in part and denied in part.

10                                **BACKGROUND**

11         The following facts, presumed true, are derived from Associated's operative
12  pleading, the complaint.  (Doc. 1.)

13  I.     The Parties And Other Relevant Entities

14         Associated is an insurance company incorporated in Florida and with its principal
15  place of business in New York.  (*Id.* ¶ 3.)

16         Pasionek, an Arizona resident, is an attorney licensed to practice law in Michigan
17  who formerly worked for Davis Miles as "of counsel."  (*Id.* ¶¶ 15, 17.)

18         Krulisky, an Arizona resident, is an attorney who formerly worked for Davis Miles
19  as "of counsel."  (*Id.* ¶¶ 6, 15.)

20         P&K is an Arizona general partnership with Krulisky and Pasionek as partners.  (*Id.*
21  ¶ 7.)

22         Davis Miles, which is a party to the State Court Action but not this action, is a law
23  firm with its principal place of business in Arizona.  (Doc. 15-1 at 4 ¶ 11.)

24  II.    The State Court Action

25         On August 15, 2014, Pasionek and Krulisky entered into a contract with Davis Miles
26  entitled "Transitional Of Counsel Agreement" in which they were "contracted with Davis

27
28  _____
[1]      Associated properly invokes diversity jurisdiction—there is complete diversity and
the amount in controversy exceeds $75,000.  (Doc. 1 ¶¶ 8-9.)

Miles as 'of counsel' attorneys." (Doc. 1 ¶ 15.)[2]

On March 30, 2015, Shamamian signed an engagement letter to retain Pasionek "in relation to properties owned by Shamamian and/or the Shamamian Trust." (*Id.* ¶¶ 14, 18.) The engagement letter stated in relevant part:

> Thank you for choosing Davis Miles McGuire Gardner, PLLC as your legal counsel. . . .   We have been asked to assist you with matters pertaining to Chase Bank's negligent conduct & Vasgen Shamamian's wrongful conveyance. . . .   For my time spent on your behalf, you will be charged the hourly rate of $440.00 for legal service and Three Hundred Dollars ($300.00) per hour for consulting services, if applicable.  My legal assistants bill at the rates of $145.00 and $95.00 per hour.  Other attorneys who may work on your file have rates from $225 per hour to $450 per hour.  Generally, though, it will be me and my legal assistants working on your file.  We request you pay an advance deposit of Five Thousand Dollars ($5,000.00) against fees and costs for the above project.  This amount will be deposited into our trust account and applied against your bill. . . .   The retainer should be remitted by wire transfer to: Wells Fargo Bank NA located at 2655 N. Power Road, Mesa, AZ 85215; ABA Routing #121000248 (International Wires- USE Swift Code: WFBIU6S); Acct #███9272; Attn: Robert A. Pasionek. . . .
>
> Sincerely,
>
> DAVIS MILES MCGUIRE GARNDER, PLLC
>
> Robert A. Pasionek, Esq.

(Doc. 15-1 at 37-39.)

The engagement letter was executed on Davis Miles letterhead.  (Doc. 1 ¶ 23; Doc. 15-1 at 37.)  However, "Davis Miles was unaware that Shamamian and the Shamamian Trust retained Pasionek in March of 2015."  (*Id.* ¶ 26.)  Additionally, "Davis Miles was unaware that Pasionek had modified a Davis Miles[] engagement letter to list his own separate corporate bank account for the purposes of receiving client trust funds or payments for client invoices."  (*Id.* ¶ 27.)

On an unspecified date (which was presumably around March 2015), Shamamian

---

[2]   "Pasionek and Krulisky entered The Transitional of Counsel Agreement on behalf of an entity yet to be formed by them at the time of execution."  (*Id.* ¶ 16.)

1    remitted the initial retainer payment to the bank account identified in the engagement letter.

2    (*Id.* ¶¶ 20-21.)

3           In June 2015, "Davis Miles terminated the Transitional Of Counsel Agreement with

4    Pasionek and Krulisky—ending their status as 'of counsel' attorneys at Davis Miles." (*Id.*

5    ¶ 29.) Afterward, Shamamian "continued to employ Pasionek for certain legal services for

6    approximately the next six years." (*Id.* ¶ 30.) "Davis Miles was unaware that Pasionek's

7    representation of Plaintiffs continued after June of 2015." (*Id.* ¶ 31.) At certain times

8    during this six-year period, "[Pasionek] issued invoices to Shamamian and the Shamamian

9    Trust using the name 'Pasionek & Krulisky' or 'Pasionek & Krulisky, P.C.'" (*Id.* ¶ 32.)

10    All told, Shamamian's payments to Pasionek and P&K between 2015 and 2021 totaled "at

11    least $422,336." (*Id.* ¶ 33.) None of this money was sent directly to Davis Miles. (*Id.*

12    ¶ 23.) Further, neither Pasionek nor Krulisky "remit[ted] or [paid] to Davis Miles any

13    portion of any fees that Shamamian or the Shamamian Trust paid to Pasionek." (*Id.* ¶¶ 24-

14    25.) Under the Transitional Of Counsel Agreement between Davis Miles, Pasionek, and

15    Krulisky, "Davis Miles was not entitled to receive any portion of fees that Shamamian or

16    the Shamamian Trust paid to Pasionek." (*Id.* ¶ 28.)

17           In March 2021, "Shamamian and the Shamamian Trust claim[ed] they first learned

18    that Pasionek was not licensed to practice law in Arizona." (*Id.* ¶ 34.)[3]

19           On April 8, 2021, Shamamian terminated the attorney-client relationship with

20    Pasionek. (Doc. 15-1 at 9 ¶ 29.)

21           On August 6, 2021, Shamamian filed the State Court Action, asserting various

22    claims against the Pasionek Defendants, the Krulisky Defendants, P&K, Davis Miles,

23    Charles Davis and his wife ("the Davis Defendants"), Gregory Miles and his wife ("the

24    Miles Defendants"), Douglas Gardner and his wife ("the Gardner Defendants"), and

25    Pernell McGuire and his wife ("the McGuire Defendants"). (*Id.* at 2-28.) Shamamian's

26    complaint in the State Court Action alleges, in relevant part, that:

27

28        [3]    When Shamamian hired Pasionek in March 2015, "Pasionek was not licensed to practice in Arizona—only in Michigan." (*Id.* ¶ 17.)

Pasionek, Krulisky, and/or P&K committed malpractice and fraud in Pasionek's representation of Shamamian and the Shamamian Trust in: (1) misrepresenting the services he could perform; (2) failing to perform services he stated he performed; (3) failing to tell Shamamian and the Shamamian Trust he was not licensed in Arizona and could not institute litigation in Arizona; (4) billing attorneys' fees for work never performed; (5) refusing to provide Shamamian and the Shamamian Trust with documents requested regarding the representation; (6) lying about conversations he had with one or more federal agencies or companies; (7) misrepresenting the amount of damages that Shamamian and the Shamamian Trust could receive; (8) substituting himself as the alleged whistleblower with various federal agencies in place of Shamamian and the Shamamian Trust for the purposes of obtaining a financial benefit; (9) misrepresenting state and federal law; (10) misrepresenting his history of filings with federal agencies; and (11) misrepresenting that Shamamian and the Shamamian Trust payments would be deposited into the Davis Miles Trust Account.

(Doc. 1 ¶ 35.)  The State Court Action also includes allegations that "Pasionek acted as an agent of Davis Miles while engaging in the conduct alleged herein.  Therefore, Davis Miles is vicariously liable for the wrongful conduct of Pasionek, including any award of punitive damages."  (Doc. 15-1 at 13 ¶ 43, 15 ¶ 54, 17 ¶ 64, 20 ¶ 75, 24 ¶ 101, 26 ¶ 113.)

The State Court Action is still ongoing.  (Doc. 15-1 at 30-35 [amended scheduling order in State Court Action]; Doc. 29 [Rule 26(f) report in this action].)  During oral argument, Shamamian's counsel stated that the judge overseeing the State Court Action recently granted summary judgment in favor of Davis Miles, the Davis Defendants, the Miles Defendants, the Gardner Defendants, and the McGuire Defendants.  Counsel also clarified that the claims in the State Court Action against the Pasionek Defendants, the Krulisky Defendants, and P&K remain pending.

III.    Insurance Coverage Dispute

Associated issued a professional liability insurance policy ("the Policy") to Davis Miles "with a policy period of August 18, 2021 to August 18, 2022."  (Doc. 1 ¶ 36.)  "The **Named Insured** on the Policy is Davis Miles."  (*Id.* ¶ 37.)[4]  In relevant part, the Policy's indemnification and defense provisions are as follows:

---

[4]    "**Bold terms** are defined in the Policy."  (*Id.* at 9 n.2.)

The **Company** shall pay **Damages** and **Claim Expenses**, in excess of the Self-Insured Retention identified in the Declarations, if applicable, and subject to the Policy's Limit of Liability, that the **Insured** shall become legally obligated to pay as a result of a **Claim** made against the **Insured** for a **Wrongful Act**, provided that (i) the **Claim** is first made against the **Insured** and reported to the Company, in writing, during the **Policy Period** or the Extended Reporting Period, if applicable; (ii) the **Insured** has no knowledge of such **Wrongful Act** prior to the Inception Date of this Policy; and (iii) such **Wrongful Act** took place on or after the **Retroactive Date** set forth in the Declarations Page of this Policy and prior to the end of the **Policy Period**.

. . . .

**Defense**.   As part of and subject to the Policy's Limit of Liability, the **Company** shall have the right and duty to defend any **Claim** against the **Insured** to which this Policy applies, even if the allegations of the **Claim** are groundless, false, or fraudulent.   However, the **Company's** duty to defend shall terminate upon exhaustion of the applicable Limit of Liability by the payment of **Damages** and/or **Claim Expenses**.

(*Id.* ¶¶ 38-39.)

The Policy defines an "**Insured**" in relevant part as:

[A]ny individual or professional corporation designated "counsel" or "of counsel" to the **Named Insured**, but solely while acting within the scope of their duties as such on behalf of the **Named Insured** for which a fee inures to the **Named Insured**[.]

. . . .

[T]he lawful spouse or lawful domestic partner of any **Insured**, if named as a co-defendant with such **Insured** solely by reason of such spouse's status as a spouse or such domestic partner's status as a domestic partner, or such spouse's or domestic partner's ownership interest in property that is sought by a claimant as recovery for an alleged **Wrongful Act** of such **Insured**, but any such coverage shall apply only with respect to a **Wrongful Act** of such **Insured**[.]

(*Id.* ¶¶ 40-41.)

Section II.G of the Policy provides that "**Damages**" exclude "the return, reduction or restitution of fees, expenses or costs for **Professional Services** performed or to be

performed by the **Insured**, or disgorgement by any **Insured**." (*Id.* ¶ 45, cleaned up.)

Sections III.A and III.F of the Policy in relevant part provide:

> [T]he Policy shall not apply to any **Damages** or **Claims Expenses** incurred with respect to any **Claim**: [(1)] based upon or arising out of any actual or alleged dishonest, criminal, intentional, malicious or fraudulent act, error or omission or any willful violation of any statute or regulation by an **Insured**, if a final adjudication adverse to such **Insured** establishes such a dishonest, criminal, intentional, malicious or fraudulent act, error or omission or willful violation. . . . [or (2)] based upon or arising out of any gaining by the **Insured** of any profit, remuneration or advantage to which such **Insured** was not legally entitled, including the disgorgement of any such profit, remuneration or financial advantage by the **Insured**, if a final adjudication adverse to such **Insured** establishes such conduct.

(*Id.* ¶¶ 47, 49, cleaned up.)

On September 19, 2021, "Associated issued a reservation of rights letter to Pasionek and Krulisky in the [State Court] Action, including reserving the right to deny coverage or seek a declaration of no coverage based on Pasionek and Krulisky not qualifying as **Insureds** under the Policy." (*Id.* ¶ 52.) That letter "also denied coverage to P&K because P&K did not qualify as an **Insured** under the Policy." (*Id.* ¶ 53.)

On March 6, 2023, "Associated issued a supplemental reservation of rights letter regarding Pasionek and Krulisky not qualifying as **Insureds** under the Policy based on the deposition testimony given in the [State Court] Action confirming that Davis Miles received no fee or benefit from Pasionek's work for Shamamian and the Shamamian Trust during Pasionek's work as an 'of counsel' attorney for Davis Miles." (*Id.* ¶ 54.)

IV.   <u>This Action</u>

On May 8, 2023, Associated initiated this action. (Doc. 1.) "Associated seeks a declaratory judgment from this Court that Associated has no duty to defend or indemnify, or pay any settlement or judgment against Pasionek Defendants, Krulisky Defendants, or P&K" in favor of Shamamian in the State Court Action because "Pasionek Defendants, Krulisky Defendants, [and] P&K are not Insureds under the Policy." (*Id.* ¶¶ 56-57, 60,

cleaned up.)[5]  "Associated is not seeking a declaration regarding its rights and coverage obligations with respect to [Shamamian's] claims against Davis Miles and other defendants in the Underlying Action" and "[it] hereby preserves and does not waive its coverage defenses under the Policy as set forth in Associated's reservation of rights letter dated September 19, 2021."  (*Id.* at 2 n.1.)

On June 12, 2023, Shamamian filed the pending motion to dismiss.  (Doc. 15.)  The motion is now fully briefed.  (Docs. 19, 20.)

On November 8, 2023, the Court issued a tentative ruling.  (Doc. 39.)

On November 20, 2023, the Court heard oral argument.  (Doc. 40.)

# DISCUSSION

## I.   Legal Standard

"Generally, district courts have a 'virtually unflagging obligation . . . to hear jurisdictionally sufficient claims.'"  *Countrywide Home Loans, Inc., v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849, 852 (9th Cir. 2011) (quoting *Snodgrass v. Provident Life & Acc. Ins. Co.*, 147 F.3d 1163, 1167 (9th Cir. 1998)).  However, the Declaratory Judgment Act ("DJA") "relaxes this obligation in cases where a party seeks declaratory relief."  *Id.*  Under the DJA,

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added).

Thus, even when a claim for declaratory relief "passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate.

---

[5]      In its complaint, Associated also asserts three additional defenses under Sections II.G, III.A, and III.F of the Policy.  (*Id.* ¶¶ 45-50.)  Associated concedes that a *Brillhart* stay is warranted as to these additional defenses but argues that its primary coverage defense, "that the Pasionek, [*sic*] and Krulisky Defendants and P&K are not Insureds under the Policy," is dispositive and does not warrant a stay or abstention.  (Doc. 19 at 5 & n.2.)

This determination is discretionary, for the Declaratory Judgment Act is deliberately cast in terms of permissive, rather than mandatory, authority. The Act gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (cleaned up). "Of course, this discretion is not unfettered. A District Court cannot decline to entertain such an action as a matter of whim or personal disinclination. Prudential guidance for retention of the district court's authority is found in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942), and its progeny." *Id.* (cleaned up). "If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Id.* at 1225. *See also Brillhart*, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."). "The pendency of a state court action, however, does not of itself require a district court to refuse declaratory relief in federal court." *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991).

The Ninth Circuit has clarified that "[t]he *Brillhart* factors remain the philosophic touchstone for the district court. The district court should [1] avoid needless determination of state law issues; [2] it should discourage litigants from filing declaratory actions as a means of forum shopping; and [3] it should avoid duplicative litigation." *Dizol*, 133 F.3d at 1225. However, "[t]he *Brillhart* factors are not exhaustive." *Id.* at 1225 n.5. The Ninth Circuit has also articulated additional factors for district courts to consider in determining whether to exercise jurisdiction over declaratory relief actions, including "[1] whether the declaratory action will settle all aspects of the controversy; [2] whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or [4] whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court

1   might also consider [5] the convenience of the parties, and [6] the availability and relative

2   convenience of other remedies." *Id.* *See also Wilton v. Seven Falls Co.*, 515 U.S. 277, 283

3   (1995).

4        In analyzing the relevant factors, "the district court must make a sufficient record of

5   its reasoning to enable appropriate appellate review." *Dizol*, 133 F.3d at 1225. Upon

6   declining to exercise its discretion to hear a declaratory judgment action, "a district court

7   is authorized . . . to stay or to dismiss an action." *Wilton*, 515 U.S. at 288.

8   II.   *Brillhart* Factors

9        A.   **Avoid Needless Determination Of State Law Issues**

10            1.   The Parties' Arguments

11       Shamamian argues that resolving this action would require the Court to engage in

12   the "needless determination of state law issues." (Doc. 15 at 13, capitalization omitted.)

13   Specifically, Shamamian argues that "[a]ll of the issues in the State Court Action are

14   governed by Arizona law, not federal law. Those issues are also relevant to the

15   determination of the declaratory judgment action and are highly disputed. The State Court

16   Action is expected to fully litigate and determine these issues. There is no reason to

17   relitigate these matters in the district court." (*Id.*) Further, Shamamian argues that

18   "insurance law is an area regulated by the states." (*Id.* at 14.) Relatedly, Shamamian argues

19   that the issue raised in Associated's complaint, "whether payments made by Shamamian

20   to Pasionek based on Pasionek & Krulisky invoices inured to the benefit of Davis Miles,"

21   "includes a state law issue of first impression." (*Id.*) Shamamian concludes that "there are

22   significant state law interests in the State Court Action and in the declaratory judgment

23   action. On the other hand, there is no compelling federal interest in either action." (*Id.*)

24       In response, Associated does not dispute that this action raises state-law issues but

25   argues that "[t]his Court's determination regarding Pasionek and Krulisky's status as

26   Insureds is not 'needless.'" (Doc. 19 at 7, cleaned up.) Associated argues that Pasionek's

27   and Krulisky's "status as Insureds is not at issue in the Underlying Action and it will not

28   be determined in the Underlying Action. Indeed, there is no factual issue that the trier of

fact in the Underlying Action must determine that bears on whether a fee 'inured' to Davis Miles' benefit as required under the Policy's relevant definition of Insured." (*Id.*, cleaned up.)  Associated also argues that this action "requires a pure legal determination whether the fees Pasionek personally collected from Shamamian Defendants (and never transmitted to Davis Miles) 'inured' to the benefit of Davis Miles.  Thus, the only issue in Associated's Action is one of contract interpretation, which is frequently addressed in this district." (*Id.*, citations omitted.)  Associated argues that even if this determination requires the Court to rely on "state court contract interpretation principles," that "is not enough to warrant abstention." (*Id.*)  Last, Associated argues that "the first *Brillhart* factor only warrants abstention in very limited circumstances," which this action does not implicate, because "there is no local issue, or one dependent on a complicated state regulatory scheme, or an issue of substantial public concern." (*Id.* at 8.)

In reply, Shamamian again argues that "[t]he facts and state law issues that are determinative of whether attorney fees inured to Davis Miles are being litigated in the State Court Action, and will have to be re-litigated in the federal court action." (Doc. 20 at 3.)  Additionally, Shamamian argues that the cases cited by Associated "are distinguishable from the case at bar" because "[they] do[] not raise issues relating to the Court's discretion under 28 U.S.C. § 2201(a) or the *Wilton*/*Brillhart* abstention doctrine." (*Id.* at 3-5.)  Shamamian also argues that "the issue as to whether attorney fees paid by Movants inured to Davis Miles does not turn on whether Davis Miles received the payment." (*Id.* at 2.)  Instead, Shamamian argues that the issue turns on "whether Movants were clients of Davis Miles" and "whether Pasionek was an apparent agent of Davis Miles," which are issues in the State Court Action. (*Id.* at 6.)

### 2.  Analysis

The first *Brillhart* factor (*i.e.*, "avoid needless determination of state law issues") favors the exercise of jurisdiction.  This is true even though this action raises an issue of state law related to insurance coverage—whether the Pasionek Defendants, the Krulisky Defendants, and P&K are "Insureds" under Associated's Policy.  Although "insurance

coverage is primarily an issue of state law," *GEICO Gen. Ins. Co. v. Tucker*, 2014 WL 1713766, *2 (D. Ariz. 2014), the Ninth Circuit has emphasized that "there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Dizol*, 133 F.3d at 1225. "Rather, the concern in the first *Brillhart* factor 'is with *unsettled* issues of state law, not fact-finding in the specific case.'" *757BD LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 330 F. Supp. 3d 1153, 1162 (D. Ariz. 2016) (citation omitted).

Associated's request for declaratory relief does not implicate unsettled issues of state law. Shamamian seems to argue that the disputed insurance coverage issue—whether the fees from Shamamian to Pasionek and P&K "inured to" Davis Miles—is an unsettled issue because neither this Court nor the Arizona state courts have adjudicated a dispute with similar facts. This argument is unavailing. As an initial matter, "[t]he absence of reported cases factually identical to the present one does not, without more, create an issue of first impression. Nor does i[t] show . . . that retention will require this Court to needlessly resolve state law issues." *757BD LLC*, 330 F. Supp. 3d at 1162. *See also Canal Indem. Co. v. Adair Homes, Inc.*, 2010 WL 3021874, *3 (W.D. Wash. 2010) ("Although there are no Washington decisions specifically addressing the mold or organic pathogen exclusion contained in the Canal policies, clear principles of Washington law regarding policy interpretation guide this Court's evaluation of the exclusion."); *Allstate Ins. Co. v. Gomez*, 2009 WL 3018712, *4 (D. Haw. 2009) ("The court sees no reason to abstain in the present case, as the case does not present unduly complex issues and as no pending Hawaii case has been identified by the parties that will interpret the applicable policy language.").

Additionally, Arizona courts have interpreted exclusions to insurance policies and contracts that are similar to the one at issue here. *See, e.g.*, *Amica Mut. Ins. Co. v. Auto Driveaway Co.*, 831 P.2d 882, 883-86 (Ariz. Ct. App. 1992) (interpreting the exclusion that "[t]his insurance shall not directly or indirectly benefit any carrier or other bailee"); *Allied Mut. Ins. Co. v. Larriva*, 507 P.2d 997, 998-99 (Ariz. Ct. App. 1973) ("Does the Exclusion Which Prevents Coverage Where Such Coverage Would Inure to the Benefit of a

Workmen's Compensation Carrier Apply?").  So, too, have federal courts.  *See, e.g.*, *Draney v. Wilson, Morton, Assaf & McElligott*, 1981 WL 1696, *1 (D. Ariz. 1981) (interpreting "inure to the benefit" language in a bond counsel's contract); *Atl. Mut. Ins. Co. v. Cooney*, 303 F.2d 253, 268-69 (9th Cir. 1962) (interpreting the exclusion that "this insurance shall not inure, directly or indirectly, to the benefit of any carrier or bailee"); *Wesco Ins. Co. v. Regas*, 2015 WL 500702, *4 (N.D. Ill. 2015) (interpreting "inure to" language in an insurance policy).[6]  Accordingly, in evaluating whether the fee that Shamamian paid to Pasionek and P&K "inured to" Davis Miles, this Court will not adjudicate an unsettled state-law issue but instead will rely on well-established principles of Arizona law regarding insurance policies and contract interpretation.  *See also Allstate Ins. Co. v. Davis*, 430 F. Supp. 2d 1112, 1120 (D. Haw. 2006) ("The issues before the Court in this action do not implicate novel or unsettled matters of state law.  On numerous occasions, the United States District Court in the District of Hawaii has interpreted insurance policies pursuant to Hawaii state law to determine the scope of an insurer's duties to an insured."); *Gomez*, 2009 WL 3018712 at *4 ("This court notes in any event that it has interpreted insurance policies under Hawaii law on numerous occasions using straightforward applications of contract principles."); *Adair Homes*, 2010 WL 3021874 at *3 ("This case involves interpretation of well-established principles of state insurance law and interpretation of clear policy language.  On numerous occasions, federal district courts have interpreted insurance policies pursuant to Washington state law to determine the scope of coverage.  The Washington courts have interpreted similarly worded exclusions as those at issue.") (citations omitted).

This conclusion is not undermined by the ongoing nature of the State Court Action. "If there are *parallel* state proceedings . . . at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Dizol*, 133 F.3d

---

[6]      Although the Court appreciates Shamamian's detailed attempt to distinguish the cases cited by Associated, this effort misses the broader picture.  The cited cases establish that although there may not be an Arizona state-court decision analyzing the precise factual issue raised here, the broader principles of Arizona law that the Court will apply when resolving that issue are settled and not unduly complex.

at 1225 (emphasis added).  State and federal proceedings are considered "parallel" in this context if (1) the proceedings "involv[e] the same issues and parties pending at the time the federal declaratory action is filed," *id.*, or (2) the parties in the proceedings are not the same but "an ongoing state proceeding involves a state law issue that is predicated on the same factual transaction or occurrence involved in a matter pending before a federal court," *Am. Nat. Fire Ins. Co. v. Hungerford*, 53 F.3d 1012, 1017 (9th Cir. 1995), *overruled in part on other grounds by Dizol*, 133 F.3d 1220.[7]

This action and the State Court Action do not qualify as "parallel" under these standards.  The first test is obviously inapplicable because Associated is not a party to the State Court Action.  As for the second test, courts look to whether "the ultimate legal determination in each [action] depends upon the same facts."  *Id.* (quoting *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278-79 (6th Cir. 1990)).  For this inquiry, "the relevant test is whether the facts at issue overlap, not whether the facts at issue are disputed."  *Owners Ins. Co. v. Monte Vista Hotel*, 2010 WL 447343, *4 (D. Ariz. 2010).  "[W]hen an ongoing state proceeding involves a state law issue that is predicated on the same factual transaction or occurrence involved in a matter pending before a federal court, the state court is the more suitable forum for a petitioner to bring a related claim."  *Hungerford*, 53 F.3d at 1017.  This rule is predicated on the concern that the federal court may assume facts in its ruling that the state court may later dispute.  *Id.*

To evaluate whether the "facts at issue" in this action and the State Court Action overlap, the Court must first determine what facts are necessary to evaluate whether the fee "inured" to Davis Miles, then consider whether those facts overlap with the facts at issue in the State Court Action.  As for the former issue, Associated argues that the only relevant

---

[7]       "Although *Dizol* overruled several prior FDJA cases, . . . it did so only to the extent that those cases erroneously held or suggested that the district court must *sua sponte* state its reasons for taking jurisdiction of an FDJA action when its jurisdiction was not challenged by the parties."  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Aero Jet Servs., LLC*, 2011 WL 4708857, *2 (D. Ariz. 2011).  "Although *Dizol* expressed the presumption favoring state court adjudication in terms of whether the actions involved 'the same issues and parties,' *Dizol* did not overrule *Hungerford*'s analysis or the cases that relied on *Hungerford*'s reasoning."  *Id.* at *3.

fact is whether Davis Miles received Shamamian's fee.  (Doc. 19 at 11 ["The only 'fact' impacting the core coverage defense of Associated's Action is the fact that Davis Miles did not collect any money from the Shamamian Defendants (or Pasionek or Krulisky) for Pasionek's work."].)   Shamamian disagrees, arguing that determining whether the fee inured to Davis Miles also requires consideration of "whether Movants were clients of Davis Miles" and "whether Pasionek was an apparent agent of Davis Miles."  (Doc. 20 at 6.)  Recognizing that this issue will be addressed in more detail during future stages of this case, the Court concludes (at least for present purposes) that Shamamian's interpretation of "inure to" is overly broad.  In other contexts, courts have suggested that whether a fee inures to a party depends, at least in significant part, on whether that party actually receives the money.  *See, e.g.*, *Guerrero v. California Dep't of Corr. & Rehab.*, 2017 WL 6270383, *2 n.1 (N.D. Cal. 2017) ("Guerrero recently settled a fee dispute with CDCR for $1.4 million.  Both Guerrero and his attorney, however, have submitted declarations showing that those fees inured to his attorneys, and therefore do not reflect on his personal finances."); *Vicari v. Sullivan*, 1989 WL 126556, *1 (W.D.N.Y. 1989) (concluding that "any dual award of fees inures to the benefit of the plaintiff" with the "return of past-due benefits to [plaintiff]").

Additionally, although the Court does not foreclose the possibility that there might be other ways (beyond direct receipt) for a fee to inure to a party, Shamamian does not explain (nor can the Court fathom) why the analysis would turn on the issues that Shamamian has identified.[8]  Under Arizona law, "[a]n attorney-client relationship exists when a person has manifested to a lawyer his intent that the lawyer provide him with legal services and the lawyer has manifested consent to do so."  *Simms v. Rayes*, 316 P.3d 1235, 1238 (Ariz. Ct. App. 2014).  Thus, whether Shamamian had an attorney-client relationship with Davis Miles may hinge in part on whether Shamamian *thought* the fees went to Davis

---

[8]      As discussed during oral argument, although Shamamian has not yet demonstrated that the facts at issue with respect to the "inure to" analysis overlap with the facts at issue in the State Court Action, the Court does not foreclose the possibility that, should Shamamian (or some other party) make such a showing at a future stage of this case, that showing might warrant reconsideration of the *Brillhart* stay analysis.

Miles, but it does not hinge on whether Davis Miles actually received those fees.  There is no overlap in the facts at issue between the attorney-client relationship and insurance coverage issues.  Similarly, although the State Court Action raises the issue whether Pasionek was an "apparent agent" of Davis Miles, apparent agency turns on whether the principal's conduct "allows a third party reasonably to conclude that an agent is authorized to make certain representations or act in a particular way."  *Miller v. Mason-McDuffie Co. of S. California*, 739 P.2d 806, 810 (Ariz. 1987).  As with the attorney-client relationship issue, the facts necessary to determine the disputed insurance coverage issue do not overlap with the facts relevant to determining whether Davis Miles held out Pasionek as its agent. The agency issue turns on third parties' assessments of Davis Miles's conduct, whereas the insurance coverage issue turns on whether Shamamian's payments to Pasionek in fact inured to Davis Miles.  *See generally Great Divide Ins. Co. v. Bear Mountain Lodge, LLC*, 2016 WL 2771115, *2 (D. Alaska 2016) ("The fact that there is an underlying tort case that involves the same fact pattern as the insurer's declaratory judgment action, and therefore has the potential for duplicative discovery, does not automatically bar declaratory relief. This principle holds true even if the resolution of the coverage dispute and the underlying tort dispute turns on a common factual inquiry, as long as the actual questions to be determined remain distinct between the coverage action and the tort action.").

Finally, although the federal interest at stake here is not particularly strong, this does not outweigh the other considerations under the first *Brillhart* factor.  *757BD*, 330 F. Supp. 3d at 1163 (concluding that the first *Brillhart* factor "weighs in favor of retention" even though the federal interest was not particularly strong).  "[A]lthough there is no compelling federal interest in diversity jurisdiction cases, that does not mean that there is no federal interest."  *Devs. Sur. & Indem. Co. v. Coyote Creek Constr. Inc.*, 2021 WL 1930270, *5 (D. Ariz. 2021).   An indirect federal interest exists when a party invokes diversity jurisdiction to get its case into federal court, as diversity jurisdiction "attempt[s] to mitigate perceived prejudice against a litigant in a judicial proceeding."  *757BD*, 330 F. Supp. 3d at 1163 (citation omitted).

B.   **Forum Shopping**

1.   The Parties' Arguments

Shamamian contends that the timing of this action shows that "Associated is forum shopping." (Doc. 15 at 14.)  More specifically, Shamamian contends that because Associated sent a reservation of rights letter on September 19, 2021, "Associated was aware of the State Court Action and the insurance coverage issues relating to Pasionek, Krulisky, and Pasionek & Krulisky within six weeks of the filing date" of the State Court Action. (*Id.*)  Shamamian contends that, notwithstanding that knowledge, "[Associated] chose to wait almost two years before filing the federal declaratory judgment action." (*Id.* at 15.)  Shamamian contends this "amounts to improper forum shopping" because Associated's federal filing occurred "shortly after mediation in the State Court Action failed, [when] it appeared that the State Court Action was headed for trial," and thus "Associated seeks to achieve a result in federal court that it was unable to achieve in state court." (*Id.*)

In response, Associated argues that it "properly filed this Action under diversity jurisdiction statutes—and it did not do so for 'forum shopping' reasons." (Doc. 19 at 8-9, capitalization omitted.)  Specifically, Associated argues that this "action was not 'reactive' because it was not filed to address the same issues that were already being addressed in the state court action." (*Id.* at 9.)  According to Associated, "(1) the underlying facts relevant to this determination are not in dispute in the Underlying Action; and (2) no party in the Underlying Action has any incentive to seek a determination that there is no coverage for the claims at issue in the Underlying Action." (*Id.*)  Additionally, although Associated does not directly address Shamamian's timing-related arguments in the "Forum Shopping" section of the response brief, Associated notes elsewhere that it only filed this action after "Pasionek, Shamamian, and the Rule 30(b)(6) corporate representative for Davis Miles all confirmed in their depositions in the Underlying Action that Shamamian Defendants paid the retainer and all subsequent fees for Pasionek's representation to Pasionek's separate and unaffiliated Wells Fargo account." (*Id.* at 3.  *See also id.* at 4 ["[T]he parties'

1    depositions confirmed[] that 'no monies paid by [Shamamian Defendants] were ever

2    deposited into the Davis Miles trust account.'"].)

3         In reply, Shamamian reiterates the timing argument—that is, that an intent to engage

4    in forum shopping can be inferred from Associated's decision to file this action two years

5    into the State Court Action and "shortly after mediation in the State Court Action failed,

6    [when] it appeared that the State Court Action was headed for trial."  (Doc. 20 at 6.)[9]

7    Further, Shamamian argues this action is "'reactive' litigation" given that "[t]he State Court

8    Action is not removable to federal court, because there is not complete diversity as required

9    by 28 U.S.C. § 1332."  (*Id.* at 5-6.)  Last, Shamamian argues that "significant facts and

10   state law issues being litigated in the State Court Action would have to [be] relitigated in

11   the federal action."  (*Id.* at 6.)

12              2.    Analysis

13        The second *Brillhart* factor (*i.e.*, the district court "should discourage litigants from

14   filing declaratory actions as a means of forum shopping") favors the exercise of

15   jurisdiction.  "Although occasionally stigmatized as 'forum shopping,' the desire for a

16   federal forum is assured by the constitutional provision for diversity jurisdiction and the

17   congressional statute implementing Article III."  *First State Ins. Co. v. Callan Assocs., Inc.*,

18   113 F.3d 161, 162 (9th Cir. 1997).  A federal action invoking diversity jurisdiction can,

19   however, constitute forum shopping when the litigation is "reactive."  Reactive litigation

20   can include (1) "trying to obtain some sort of undue advantage," *Coyote Creek Constr.*,

21   2021 WL 1930270 at *6, such as "fil[ing] a declaratory judgment action in federal court

22   'during the pendency of a non-removable state court action presenting the same issues of

23   state law," *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 976 (9th Cir. 2011)

24   (citation omitted); (2) "attempting to undermine or preempt an established or pending state

25   court ruling," *Aero Jet*, 2011 WL 4708857 at *4; or (3) "filing a federal court declaratory

26

27   [9]    During oral argument, Shamamian asserted that Associated became aware during
     the early stages of the State Court Action that Davis Miles did not receive any payment
28   from Shamamian, as evidenced by Davis Miles's filing of a motion to dismiss with an
     attached declaration from Charles Davis certifying the non-receipt of any such payment.

action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action," *Am. Cas. Co. of Reading, Penn. v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999).  *See also Nat'l Chiropractic Mut. Ins. Co. v. Doe*, 23 F. Supp. 2d 1109, 1117 (D. Alaska 1998) ("A 'reactive' or 'defensive' declaratory judgment action is typically a diversity federal action commenced by an insurer that has already been sued in state court, either by the injured third party or the insured.").

This action is not reactive litigation—Associated is not a party to the State Court Action and the insurance coverage dispute will not be resolved in the State Court Action. Shamamian's reliance on *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367 (9th Cir.1991), *overruled in part on other grounds by Dizol*, 133 F.3d at 1220, is thus misplaced. *Robsac* involved state and federal actions with the same parties—after the insured sued the insurer in state court for breach of contract (*i.e.*, failing to provide coverage under the insured's policy), the insurer brought a declaratory relief action in federal court seeking a determination that it owed no coverage obligation.  *Robsac*, 947 F.2d at 1368-69.  As discussed in Part II.A.2 above, those are not the circumstances here.  The legal issue in this action concerns insurance coverage, while the State Court Action turns on allegations of consumer fraud, breach of fiduciary duty, constructive fraud, negligent malpractice, common law fraud, fraudulent concealment, unjust enrichment, and negligent vetting and supervision.

Courts have consistently held that a declaratory relief action to determine insurance coverage filed by an insurer in federal court, even if filed in response to its insured being sued in state court, does not constitute forum shopping where the insurer is not a party to the state-court litigation and the insurance coverage issue is not being litigated in state court.  *See, e.g.*, *Colony Ins. Co. v. JK Farm Lab. LLC*, 2022 WL 4094148, *3 (D. Ariz. 2022) ("Plaintiff is not a party to the state court lawsuit, nor will that lawsuit settle the insurance coverage issue Plaintiff raised.  Plaintiff's lawsuit is a consequence of its insured being sued by Salcedo, but Plaintiff's suit is not reactive 'in the sense that it is trying to obtain some sort of undue advantage.'  The Court finds this factor weighs in favor of

retention and that no inference of forum shopping can be made.") (citation omitted); *Coyote Creek Constr.*, 2021 WL 1930270 at *6 (same); *Davis*, 430 F. Supp. 2d at 1121 (same); *Aero Jet*, 2011 WL 4708857 at *4 (finding no forum shopping even when insured "sought defense and potential indemnification in the underlying state court action"). Admittedly, Associated's filing of this action two years after the commencement of the State Court Action raises some alarm bells (and, as discussed *infra*, could potentially implicate some of the supplemental *Dizol* factors), but that timing is not dispositive as to the presence or absence of forum shopping under the circumstances presented here. *See, e.g.*, *JK Farm Lab.*, 2022 WL 4094148 at *1 (no forum shopping even though insurer filed federal declaratory action more than one year after sending reservation of rights letter and two years after accident at issue). "[T]he fact that one party prefers to litigate the case in federal court instead of state court does not, by itself, suggest forum shopping." *Coyote Creek Constr.*, 2021 WL 1930270 at *6.

      C.    **Duplicative Litigation**

          1.    The Parties' Arguments

Shamamian contends that "the issues raised in plaintiff's declaratory judgment action are being thoroughly litigated in the State Court Action. Therefore, it would be uneconomical and a waste of judicial resources for the district court to duplicate the efforts in the State Court Action." (Doc. 15 at 12.) According to Shamamian, "[t]he facts establishing the foregoing relationships, and whether fees paid by Movants inured to the benefit of Davis Miles or Pasionek & Krulisky, are best litigated in the parallel State Court Action." (*Id.*)

In response, Associated argues that the State Court Action and this action are not duplicative "for several reasons." (Doc. 19 at 10.) First, Associated argues there is no overlap because "Associated is not a party to the Underlying Action and the Underlying Action does not address any coverage issues." (*Id.*) Next, Associated argues that "the Underlying Action will not determine any fact that has a bearing on whether Pasionek and Krulisky qualify as Insureds under the Policy." (*Id.* at 11, cleaned up.) Associated argues

"[t]he only 'fact' impacting the core coverage defense in Associated's Action is the fact that Davis Miles did not collect any money from the Shamamian Defendants (or Pasionek or Krulisky) for Pasionek's work" and that "Davis Miles' lack of receipt of any fee has no bearing on whether it, as the alleged principal, gave actual or apparent authority to the agent" or on any of the elements of Shamamian's legal malpractice, fiduciary duty, negligence, and fraud claims.  (*Id.*)  In a related vein, Associated argues that although Shamamian "cites issues that are allegedly duplicative," "all the issues they identify are irrelevant to Associated's Action."  (*Id.* at 12.)

In reply, Shamamian contends that "the state court and federal court actions are duplicative" because there are "several issues that are relevant to both the State Court Action and the federal Declaratory Judgment Action."  (Doc. 20 at 6, capitalization omitted.)  Specifically, Shamamian contends that "[i]n order to determine whether attorney fees paid by Movants inured to Davis Miles," the Court must decide "whether Movants were clients of Davis Miles" and "whether Pasionek was an apparent agent of Davis Miles."  (*Id.* at 6-8.)  Shamamian also contends that "[t]he issue as to whether fees paid by Movants inured to Davis Miles is highly disputed."  (*Id.* at 2.)

### 2.   Analysis

The third *Brillhart* factor (*i.e.*, the district court "should avoid duplicative litigation") favors the exercise of jurisdiction.  The first and third *Brillhart* factors often go hand in hand.  *Home Indem. Co. v. Stimson Lumber Co.*, 229 F. Supp. 2d 1075, 1081 (D. Or. 2001) ("I view this factor as equal to the first factor in which the overlap between state law issues and issues present in the federal declaratory relief action is examined."); *Doe*, 23 F. Supp. 2d at 1118 ("[The first *Brillhart* factor] primarily concerns the unnecessary duplication of trying the same legal claim in state and federal court.").  Duplicative litigation arises when the federal and state actions are parallel proceedings.  *See, e.g.*, *Davis*, 430 F. Supp. 2d at 1121 ("[D]uplicative litigation may be a concern if this Court's determination regarding Allstate's duties hinges on a finding that will also be addressed in the state court.").  As discussed in Part II.A.2, this action and the State Court Action are

not parallel because they do not involve the same parties, legal issues, or dispositive facts. Associated is not a party to the State Court Action and the insurance coverage issue presented here is distinct from the legal issues to be resolved in the State Court Action.  *Cf. Evanston Ins. Co. v. Workland & Witherspoon, PLLC*, 2014 WL 4715879, *5 (E.D. Wash. 2014) ("Here, the legal issues concern coverage liability and obligation to defend; in state court, the legal issues concern tort liability."); *Century Sur. Co. v. Byal*, 2011 WL 2550832, *3 (N.D. Cal. 2011) ("The underlying state court actions are a civil suit by the decedent's family against defendant, and a criminal proceeding against the alleged murderers of the decedent.  They are not insurance coverage suits in any way.  This action does not entail parallel litigation of any disputed state-law issues, and therefore this factor does not favor staying or dismissing the action."); *Adair Homes*, 2010 WL 3021874 at *2 ("The state proceeding involving the insured is a personal injury and property damage action, whereas this federal action arises under contract and insurance law.").

> D.    **Conclusion**

Having evaluated the "philosophic touchstone" *Brillhart* factors, the Court concludes that all three factors weigh in favor of exercising jurisdiction over Associated's claim for declaratory relief.

III.    *Dizol* Supplemental Factors

> A.    **Settle All Aspects Of The Controversy**

>> 1.    The Parties' Arguments

Shamamian contends that because "Davis Miles is not a party to the declaratory judgment action . . . the litigation of the declaratory judgment action will not resolve all of the insurance coverage issues.  Rather, it is likely to result in piecemeal litigation, with a second declaratory judgment action filed with respect to Davis Miles if Shamamian's case is successful."  (Doc. 15 at 15-16, cleaned up.)

In response, Associated argues that "the declaratory judgment action will settle all aspects of the controversy between Associated, the Shamamian Defendants, and the Pasionek and Krulisky Defendants, because it will determine whether coverage is owed

1    under the Policy for Plaintiff's claims against Pasionek, Krulisky and P&K." (Doc. 19 at

2    13.)  Further, Associated argues that "Davis Miles was not named in this Action because

3    Associated is not disputing that Davis Miles is an Insured under the Policy." (*Id.*)

4          Shamamian offers no further argument in reply. (Doc. 20.)

5          2.    Analysis

6          The tentative ruling issued before oral argument stated that the first *Dizol* factor

7    (*i.e.*, "whether the declaratory action will settle all aspects of the controversy") was neutral

8    because, *inter alia*, "[e]xercising jurisdiction over this action will not settle all issues

9    related to insurance coverage under the Policy because liability issues concerning Davis

10   Miles are still pending in the State Court Action."  However, in light of Shamamian's

11   counsel's disclosure during oral argument that the judge overseeing the State Court Action

12   recently granted summary judgment to Davis Miles, the first *Dizol* factor may very well

13   favor the exercise of jurisdiction.  At worst, it is neutral and does not outweigh the *Brillhart*

14   factors or the other *Dizol* factors.

15   **B.    Useful Purpose In Clarifying The Legal Relations At Issue**

16         1.    The Parties' Arguments

17         Shamamian argues that "[t]he relationships of the parties are best litigated in the

18   State Court Action" and "[t]he declaratory judgment action will add nothing in this regard."

19   (Doc. 15 at 16.)

20         In response, Associated argues that this action "will serve a useful purpose in

21   clarifying the coverage issue," which "will likely be useful for the state court action since

22   it will clarify for the parties what sources of indemnity payments may or may not be

23   available.  It will also clarify for the parties whether the Pasionek and Krulisky Defendants

24   will continue to be represented by counsel paid for by Associated." (Doc. 19 at 13.)

25         Shamamian offers no further argument in reply. (Doc. 20.)

26         2.    Analysis

27         This *Dizol* factor (*i.e.*, "whether the declaratory action will serve a useful purpose

28   in clarifying the legal relations at issue") favors the exercise of jurisdiction.  By clarifying

whether Associated has an obligation to defend or indemnify the Pasionek Defendants, the Krulisky Defendants, and P&K in the State Court Action, this action will serve a useful purpose. *JK Farm Lab.*, 2022 WL 4094148 at *3 ("This litigation will serve a useful purpose in clarifying Plaintiff's obligation to defend or indemnify Defendants in state court."); *Allstate Ins. Co. v. Gillette*, 2006 WL 997236, *4 (N.D. Cal. 2006) ("This factor weighs strongly in favor of Allstate. Allstate is currently encumbered with the responsibility of defending the state-court action. If it turns out that the Mitsubishi is not covered under the Allstate policy, this burden would be lifted. Determining what Allstate's burden is *vis a vis* Liebowitz and Gillette is an important and pressing question.").

## C.   **Procedural Fencing Or Res Judicata Advantage**

### 1.   The Parties' Arguments

Shamamian argues that Associated "is attempting to obtain a favorable ruling in federal court rather than risk an unfavorable state court result." (Doc. 15 at 16.) Shamamian continues that because "[t]he issues raised in the State Court Action and in this insurance coverage declaratory judgment action are the same," a favorable federal court "ruling could be binding in the State Court Action under the doctrine of issue preclusion." (*Id.*)

In response, Associated argues that it "did not file this Action for the purposes of procedural fencing or to obtain a res judicata advantage" because the issue in this action "is not being litigated in the Underlying Action." (Doc. 19 at 13.)

Shamamian offers no further argument in reply. (Doc. 20.)

### 2.   Analysis

This *Dizol* factor (*i.e.*, "whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage") favors the exercise of jurisdiction. As discussed in Part II.A.2 above, the insurance coverage issue in this action is not being litigated in the State Court Action and the key facts do not overlap. Accordingly, there is no concern that a determination of the insurance coverage issue would have an issue-preclusive effect on issues being litigated in the State Court Action.

1

**D.**   **Entanglement Between The Federal And State Court Systems**

2

1.   The Parties' Arguments

3       Shamamian argues that "proceeding with this case in the district court would

4   needlessly entangle the state and federal court systems" because "Associated is asking the

5   federal district court to allow the litigation of issues that are already heading to trial in the

6   State Court Action."  (Doc. 15 at 15.)

7       In response, Associated argues that this action will not result in entanglement

8   because "this Action addresses a distinct and separate issue from the Underlying Action."

9   (Doc. 19 at 13.)

10       Shamamian offers no further argument in reply.  (Doc. 20.)

11

2.   Analysis

12       This *Dizol* factor (*i.e.*, "whether the use of a declaratory action will result in

13   entanglement between the federal and state court systems") is neutral.

14       On the one hand, although the parties in the State Court Action "have engaged in

15   extensive discovery" for 22 months, including "exchang[ing] several thousand pages of

16   documents, . . . obtain[ing] records via subpoenas, and . . . tak[ing] several depositions"

17   (Doc. 15 at 2), the Court would not improperly inject itself into that process by exercising

18   jurisdiction over this action because the facts at issue in each proceeding differ for the

19   reasons discussed in Parts II.A.2 and II.C.2 above.  *Byal*, 2011 WL 2550832 at *4 ("The

20   issues in this and the state-court actions are sufficiently distinct such that no competing

21   factual or legal determinations are likely.").  *See also Gomez*, 2009 WL 3018712 at *5

22   ("Nor will this case necessarily result in entanglement between the federal and state court

23   systems, as the insurance coverage issues presented here are separate and distinct from the

24   breach of contract and tort issues asserted in the underlying state-court case.").

25       On the other hand, some courts have found that the entanglement factor weighs in

26   favor of abstention when the federal action would result in a declaration that the insurer is

27   not responsible for defending a party in ongoing state-court litigation.  *JK Farm Lab.*, 2022

28   WL 4094148 at *3 ("The Court agrees with Defendants that an entanglement between the

- 25 -

federal and state court systems may occur if Plaintiff establishes it is no longer responsible for Defendants' defense in the state court action."); *Coyote Creek Constr.*, 2021 WL 1930270 at *7 ("The Court has already noted that adjudicating this case will not involve the determination of the same factual or legal issues, which alleviates any concerns about inconsistent rulings.  However, the Court does agree with Coyote Creek that the federal and state court systems may become entangled if Plaintiff succeeds in establishing it is not responsible for defending Coyote Creek in the Underlying Action.").  Here, Associated requests a declaration that it is not obligated to defend or indemnify the Pasionek Defendants, the Krulisky Defendants, and P&K in the State Court Action.  Such a declaration may result in some indirect entanglement.  Additionally, although Associated has provided an explanation for its delay in filing this action (*i.e.*, it waited to file suit until after the depositions in the State Court Action confirmed that Davis Miles didn't receive any of the fees that Shamamian paid to Pasionek), this timing can still be construed as implicating the entanglement factor.  Accordingly, this factor is neutral.

> E.    **Convenience Of The Parties**

>> 1.    The Parties' Arguments

Shamamian argues that "[t]his consideration strongly favors a dismissal or stay of the declaratory judgment action."  (Doc. 15 at 16.)  Shamamian specifically points to Associated's "unreasonable delay" in filing this action.  (*Id.*)  Shamamian also points to the "additional attorney's fees and expenses for duplicative effort in relitigating the same issues in federal court."  (*Id.* at 16-17.)

In response, Associated argues that it would be "inconvenient" to litigate the declaratory relief action in state court because "Associated would have to intervene as a party to the Underlying Action."  (Doc. 19 at 13.)

Shamamian offers no further argument in its reply.  (Doc. 20.)

>> 2.    Analysis

This *Dizol* factor (*i.e.*, "convenience of the parties") favors the exercise of jurisdiction.  Although Shamamian complains about the costs of litigating in two forums,

Shamamian would have incurred additional costs related to the coverage dispute even if Associated had chosen to intervene in the State Court Action (or filed a separate state-court action) for the purpose of litigating that dispute. *Coyote Creek Constr.*, 2021 WL 1930270 at *8 ("[T]ime and money will be spent to litigate the declaratory action whether it is spent in state court or federal court."). As for the timing issue, the Court views it as best analyzed under the fourth *Dizol* factor above.

F.      **Availability And Relative Convenience Of Other Remedies**

1.      The Parties' Arguments

Shamamian argues that "Associated can refile its declaratory judgment action if Movants prevail in the State Court Action and insurance coverage becomes an issue." (Doc. 15 at 17.)

In response, Associated argues that "dismissing or staying this Action is not convenient. It is prejudicial to Associated to stay this Action and require Associated to continue incurring defense costs for Pasionek and Krulisky Defendants, which are not covered expenses if Pasionek and Krulisky are not Insureds under the Policy." (Doc. 19 at 13-14, cleaned up.)

Shamamian offers no further argument in reply. (Doc. 20.)

2.      Analysis

This *Dizol* factor (*i.e.*, the availability and convenience of alternative remedies) favors the exercise of jurisdiction. Because Associated is not a party to the State Court Action, it had to take some affirmative step to seek a judicial determination of its defense and indemnification obligations as to the Pasionek Defendants, the Krulisky Defendants, and P&K. Associated chose to do so by filing this action in federal court. Although Associated could have pursued the same form of declaratory relief in Arizona state court, Shamamian has not demonstrated that doing so would have been more convenient than filing this action.

…

…

G.      **Conclusion**

The supplemental *Dizol* factors are either neutral or weigh in favor of exercising jurisdiction.  Given that, and in light of the fact that all three *Brillhart* factors weigh in favor of exercising jurisdiction, the Court exercises its discretion to hear Associated's declaratory relief action.

Accordingly,

**IT IS ORDERED** that Shamamian's motion to dismiss or stay (Doc. 15) is **granted in part and denied in part**.  More specifically, a stay is granted (per Associated's stipulation, *see* Doc. 19 at 5 n.2) as to the three additional defenses under Sections II.G, III.A, and III.F of the Policy but otherwise denied.

Dated this 21st day of November, 2023.

Dominic W. Lanza
United States District Judge